UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

-----------------------------------------------------------------X
JOHN DOE,                                               :     Civ. No. 15-cv-00144-S-LDA
                                                        :
                     **Plaintiff,**            :
                                                        :
    -against-                                          :
                                                        :
BROWN UNIVERSITY                                        :
  in Providence in the State of Rhode Island         :
  and Providence Plantations,                         :
                                                        :
                     **Defendant.**           :
-----------------------------------------------------------------X

## MEMORANDUM IN SUPPORT OF
## MOTION TO AMEND COMPLAINT

Plaintiff John Doe submits this Memorandum in support of his Motion to Amend the Complaint filed in this action in the form attached as Exhibit A to the Motion. (As noted in the Motion, both the original and amended Complaints retain the same exhibits with the same labels; therefore, Plaintiff elected not to re-attach them to Exhibit A.)

As presented in further detail below, Plaintiff seeks leave to add four new contract-based claims to the Complaint, based on a review of the Court's decision on the Motion to Dismiss (*Doe v. Brown University,* 168 F.Supp.3d 177 (D.R.I. 2016)) (referred to below as "MTD Decision"), information developed in discovery and the Court's decision in a case decided last year (*Doe v. Brown University*, 210 F.Supp.3d 310 (D.R.I. 2016) (referred to below as "John Doe 2 Decision")[1].

.     The proposed Amended Complaint retains the claims of its predecessor, including those dismissed by the Court in the MTD Decision, in order to preserve Plaintiff's rights in the event

---

[1]     Because both the original and proposed amended Complaints are complex documents, Plaintiff attaches to this memorandum as Exhibit 1 a 1-page summary of the differences in the two documents, cross-referenced with citations to the Court's MTD Decision.

of an appeal. In addition, the Amended Complaint makes four new contract-based claims, namely:

- The case administrator did not adequately perform her contractual duty to "collect" evidence during the pre-hearing investigation;

- Defendant failed to provide Plaintiff with a complete set of "case materials" at least seven (7) days before the Student Conduct Board hearing;

- Defendant failed to allow Plaintiff to communicate with his legal counsel during the Student Conduct Board hearing;

- Defendant failed to define a standard of "consent" on which to base sanctions against Plaintiff for "unconsented" sexual activity.

I. Legal Standard

A. Motion to Amend

Plaintiff seeks leave to amend the Complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, which provide that leave will be "freely given when justice so requires." *John Doe* 2, 210 F.Supp. 2d 310, 345 (quoting *Palmer v. Champion Mortgage*, 465 F.3d 24, 30 (1st Cir. 2006)).

B. Contract Law Claims

The first three of the Amended Complaint's proposed new claims seek to enforce contractual rights that are set forth in Brown University's Code of Student Conduct and Guide to the Investigative Process. In the MTD Decision, 166 F.Supp.3d at 177, 191, the Court described the legal framework to evaluate claimed contractual rights as follows:

Under Rhode Island law, "[a] student's relationship to his university is based in contract." *Havlik v. Johnson & Wales Univ.*, 509 F.3d 25, 34 (1st Cir.2007) (citing *Mangla v. Brown Univ.*, 135 F.3d 80, 83 (1st Cir.1998)). "The relevant terms of the contractual relationship between a student and a university typically include language found in the university's student handbook." Id. Rhode Island courts "interpret such contractual terms in accordance with the parties' reasonable expectations, giving those terms the meaning that the university reasonably should expect the student to take from them." Id. (citing *Mangla*, 135 F.3d at 83).

The Amended Complaint's fourth new claim does not seek to enforce a specific and clear contractual right; instead, it seeks to challenge the sanction imposed upon Plaintiff for allegedly violating a standard of conduct that is not clearly stated in the contract. The Rhode Island Supreme Court has "consistently held that a contract provision is ambiguous if it is 'reasonably susceptible of different constructions." *Carney v. Carney*, 89 A.3d 772, 776 (R.I. 2014) (quoting *Paul v. Paul,* 986 A.2d at 989, 993 (R.I. 2010) and *Andrukiewicz v. Andrukiewicz,* 860 A.2d 235, 238 (R.I. 2004)). *See also John Doe* 2, 210 F.Supp. 310, 332 ("Any '[a]mbiguities in a contract must be construed against the drafter of the document,' *Haviland v. Simmons,* 45 A.3d 1246, 1259-60 (R.I. 2012), which in the case of a student handbook is the university"). Where, as is true here, the ambiguous term (namely "consent") is material, Plaintiff seeks the Court's permission to add a claim challenging the enforcement of that contractual prohibition.

II.     Argument

Plaintiff moves for the Court to grant leave to amend his Complaint to add four new contract-based claims as follows:

   A.     Failure To Collect Evidence (Exhibit A, ¶¶47-56, 229-30)

In his original Complaint, Plaintiff challenged the adequacy of Brown University's investigation, describing his claim as one that the University "fail[ed] to review

evidence/witnesses offered by Plaintiff prior to making the determination to file the Charges."
See MTD Decision, 166 F.Supp. 3d 177, 194. The Court granted Defendant's Motion to
Dismiss, stating that ""Doe's allegation - that Brown did not properly *consider* the evidence –
does not state a violation of the Investigation Guide's promise to *collect* evidence." *Id.*
(emphasis in original). Plaintiff now asserts a claim based on the Court's ruling.

The Code of Student Conduct (Complaint, Exhibit A) and Guide to the Investigative
Process (Exhibit D) discuss the case administrator's responsibility to collect information while
conducting an investigation. Page 10 of the Code of Student Conduct defines the case
administrator's responsibility to investigate in these terms:

> 6.  **Case Administrator.** A case administrator is a University official designated by the Senior Associate Dean for Student Life to manage these procedures. The case administrator will conduct formal investigations when requested to do so by the Senior Associate Dean for Student Life. Additionally, the case administrator will respond to requests from respondents and complaining witnesses during the prehearing phase of the student conduct procedures.

Once the Senior Associate Dean appoints the case administrator to conduct a "formal
investigation", the administrator's responsibilities are further defined in the Guide to the
Investigative Process (Exhibit D), p. 3 as follows:

> **Why does the case administrator want to meet with me?**
> The case administrator is the University official designated by the Senior Associate Dean for Student Life to collect information about the incident
> . . .
>
> **What does the case administrator do with the information he/she may collect?**
> After the case administrator has collected information about the incident from the responding student, the complaining student (if there is one), and any witnesses, she/he will provide the case materials to the Senior Associate Dean for Student Life. The Senior Associate Dean for Student Life will use the materials to determine whether or not there is a reasonable basis to file student conduct charges and, if so, at what venue the matter should be heard.

Plaintiff asserts that these responsibilities to conduct "formal investigations" and to "collect" should be defined by the plain meaning of these words.

While these is no single universally accepted definition of each of these words, Plaintiff offers for the Court's consideration those definitions found in Black's Law Dictionary (2d Ed.) Online, available at http://thelawdictionary.org/ According to Black's, "Investigation" is defined as "A term that means to examine and to look at carefully, discover the factor make a legal inquiry." Black's defines the term "collect" this way:

> To gather together; to bring scattered things (assets, accounts, articles of property) into one mass or fund. To collect a debt or claim is to obtain payment or liquidation of it, either by personal solicitation or legal proceedings

Based on these definitions, Plaintiff contends that the case administrator's duty to conduct "formal investigations" and to "collect" evidence goes beyond the passive receipt of materials provided by the parties to a proceeding. Consider the example of the Internal Revenue Service, our nation's tax collector. If Congress limited the mission of the IRS to *receiving* taxes rather than *collecting* them, reluctant taxpayers would take a holiday, and government revenues would plummet. In a similar way, Plaintiff contends it is reasonable to expect an investigation (not to mention a "formal" investigation) will have at least some level of initiative, and that it is reasonable to expect that the case administrator's responsibility to "collect" information goes beyond its passive receipt. In fact, Plaintiff alleges that on at least one occasion, Dean Castillo did exactly this, taking the initiative to obtain a copy of Jane Doe's medical records from Women and Infants Hospital, and presenting them to Vice President Klawunn for her

consideration in formulating charges against John Doe to bring to the Student Conduct Board. *See* Proposed Amended Complaint (Exhibit A to Motion to Amend), ¶¶51-53, 56. [2]

On the other hand, Dean Castillo became aware of many other types of available, relevant and material evidence related to the charges against John Doe that she made no effort to collect, including the following:

- John Doe identified witnesses who could corroborate his account of what happened. Although Dean Castillo assured John Doe she would contact these witnesses, she did not do so. In the meantime, she received statements from all of Jane Doe's witnesses that she forwarded to Vice President Klawunn to consider when forming charges against John Doe. ¶¶44, 45.

- In her statement to the Department of Public Safety (DPS) (which Dean Castillo obtained and forwarded to Vice President Klawunn), Jane Doe referred to several text messages among her friends to support her account which she offered to provide to DPS. Neither the DPS nor Dean Castillo followed up with DPS, Jane Doe or her witnesses to collect these texts. ¶¶47, 48. Later on, John Doe formally requested that Dean Castillo collect these texts from Jane Doe and her witnesses, but she still failed to do so. ¶63.

- Jane Doe indicated in her report to DPS and her Complaint that she first went to Brown Health Services on October 14 to treat her injuries. Dean Castillo never collected that medical record. ¶49.

- Jane Doe reported to DPS that she wore a high-necked dress the night of the encounter, and John Doe "pulled it down." Neither DPS nor Dean Castillo collected the dress, which could have corroborated (or rebutted) Jane Doe's description. ¶50.

In interpreting the scope of Brown University's contractual duty to "collect" information as part of a "formal investigation", the Court must consider the parties' "reasonable expectations, giving those terms the meaning that the university reasonably should expect the student to take from them." *See* pp. 2-3, *supra* (quoting MTD Decision). On the one hand, it is not reasonable for a student to expect a university to devote the same resources to a civil disciplinary proceeding

---

[2] Future references of the form "¶X" refer to Paragraph X of the proposed Amended Complaint (Exhibit A to the Motion to Amend).

that a police department would devote to a criminal investigation.[3] On the other hand, the impact of sexual misconduct proceedings on students' lives (both complainants and respondents) goes far beyond those attached to smaller infractions such as streaking on campus or taking food out of the dining hall. Under these circumstances, a University's mere passive receipt of information is simply inadequate.

In a proceeding in which the two principal witnesses provide diametrically opposed testimony on many key points, contemporaneous physical evidence can be the best possible tool for resolving conflicts. During her formal investigation, Dean Castillo was presented with specific examples of highly relevant evidence that it would not be difficult for her to collect. By collecting (as opposed to receiving) only the hospital records, she failed to perform her duty to, at a minimum, make a reasonable effort to collect the additional relevant evidence that had been specifically brought to her attention, and which would be feasible to obtain.

B. <u>Failure to timely provide "case materials."</u> (¶¶51, 56, 65-94, 248)

Plaintiff's second new contract-based claim also seeks to take account of the Court's reasoning in its MTD Decision dismissing one of the original complaint's contract-based claims relating to lack of notice. More specifically, the Court made the following holding:

> Doe's next allegation is that "Brown failed to provide all evidence to Plaintiff at least seven (7) business days prior to hearing," as supposedly required by the Code, is not sufficient. (Pl.'s Opp'n 27, 29, ECF No. 15.) As Brown notes, the Code provides that an initial file must be submitted seven days before the hearing, but further information can be allowed up to four days before, or even later than that at the discretion of the hearing officer. (<u>See</u> Def.'s Mot. 31, ECF No. 10-1; Ex. A to Compl. at 16, ECF No. 1-1.)

---

[3] With that said, Brown's own practices demonstrate its understanding that the 2014-15 procedures allowed room for improvement. In the year following John Doe's case, Brown University changed its procedures to incorporate the engagement of an outside investigator to "gather" information for the Title IX Council. *John Doe 2*, *supra*, 210 F.Supp. 3d 310, 316-17.

7

Therefore, Doe's allegation that he did not get seven days' notice of all evidence does not state a claim for breach of contract.

MTD Decision, 166 F.Supp. 3d at 194-95 (part (vi)).

The Court dismissed this claim because some of the "evidence" considered by the Student Conduct Board included witness statements that the Code specifically allowed parties and witnesses to submit as late as four (4) days before the Student Conduct Board hearing. *See* Code of Student Conduct (Exhibit A to Complaint), p. 16 ("Requests for Witnesses"). While Plaintiff still questions whether it is fair to respondents to reconcile these two conflicting provisions of the Code in this way, Plaintiff has amended the Complaint to focus on a subset of the total evidentiary record, namely the "case materials," which are collected earlier in the charging process. The Investigative Guide (Exhibit D) and Code of Student Conduct (Exhibit A) use the term "case materials" in this way:

> **What does the case administrator do with the information he/she may collect?**
> After the case administrator has collected information about the incident from the responding student, the complaining student (if there is one), and any witnesses, she/he will provide the <u>case materials</u> to the Senior Associate Dean for Student Life. The Senior Associate Dean for Student Life will use the materials to determine whether or not there is a reasonable basis to file student conduct charges and, if so, at what venue the matter should be heard.
>
> Exhibit D, p. 3.

> A case administrator will forward relevant <u>case materials</u> to the Senior Associate Dean for Student Life who will determine whether or not there is a reasonable basis to file charges,. If it is determined that charges will be filed, the Senior Associate Dean for Student Life will refer the matter to the appropriate hearing venue.
>
> Exhibit A, p. 12

**SCB PRE-HEARING PROCEDURES**
Notice Requirements

**Notice.** At least seven (7) days before the hearing, the case administrator will provide the respondent(s) with written notification of the charges, the time and place of the hearing, and a copy of the <u>case materials</u>. The complaining witness also receives the case materials

Exhibit A, p. 16

(Emphasis added to each section)

In this way, the Code defines "case materials" to be the evidence collected by the case administrator during her "formal investigation", which she provides to the Senior Associate Dean of Student Life to review when forming charges to present to the Student Conduct Board.

In the Amended Complaint, Plaintiff alleges that Brown University obtained the Womens and Infants medical records on or before November 3 (¶51) and Vice President Klawunn reviewed them when determining which charges to bring against John Doe (¶56). The Amended Complaint further alleges that, on November 5, Defendant sent a letter to Plaintiff informing him of the charges against him along with "current evidence collected in this case." ¶69. The attachments included statements from the parties, the DPS and Jane Doe's (but not John Doe's) witnesses, but no medical records from Women and Infants Hospital. ¶¶70-74. Instead, John Doe did not receive the Womens and Infants Hospital until the evening of November 17, fewer than four days before the SCB hearing. ¶85.

The Amended Complaint alleges an additional violation of the Code's requirement of seven days' notice based on subsequent events. The Amended Complaint alleges that during the period November 9-13, Brown University received another witness statement from K.R/ (Jane Doe's witness) with text messages, as well as a set of Jane's medical records from Brown Health

9

Services and Womens and Infants Hospital. ¶¶85, 86. These materials were ultimately incorporated into the record of documentary evidence reviewed by the Student Conduct Board. ¶87. As a result, Brown had the opportunity (and the Amended Complaint alleges the obligation) to forward these case materials to John Doe at least seven (7) days in advance of the November 21 Student Conduct Board hearing. ¶86. The Amended Complaint alleges that Brown failed to produce these materials to Plaintiff until the evening of November 17, fewer than four (4) days before the Student Conduct Board hearing. ¶¶88, 89.

      B.      <u>Failure to provide access to legal counsel</u> (¶¶118-127, 249, 250)

Plaintiff's third new contract-based claim arises from his inability to consult with legal counsel during the Student Conduct Board hearing. The Code defines the parties' right to legal counsel and other advisors as follows:

**THE SCB HEARING PROCESS**

**Hearing Participants**

    **1.**    **Advisors.** In a SCB hearing, the respondent(s) and complaining witness(es) may have advisors chosen from within the University community. The advisor may make statements and generally assist the respondent(s) and complaining witness(es) during the hearing. The advisor must be a full-time Brown faculty or staff member, and the advisor may not be an attorney.

    **2.**    **Advocate for Complaining Witness.** During a SCB hearing involving a charge of sexual misconduct, the complaining witness may be accompanied by a University Advocate. The Advocate is present only for the purpose of providing support to the complaining witness and will not participate in the hearing.

    **3.**    **Attorneys.** If a SCB hearing involves allegations that could constitute a capital/life offense under Rhode Island criminal law, the respondent may be accompanied by an attorney. The attorney may not participate in the hearing The attorney is present to safeguard the respondent's rights at any subsequent criminal proceeding and may advise the respondent only with respect to his/her testimony. Any attorney in attendance will comply with all guidelines for the SCB hearing process.

Exhibit A, p. 15.

In the Amended Complaint, Plaintiff alleges that he retained Matthew Dawson, Esq. to attend the SCB hearing as his attorney (¶121). At the hearing, University officials denied Attorney Dawson's request to sit next to Plaintiff to advise him at the hearing. (¶122). Instead, they directed Attorney Dawson to sit away from Plaintiff, and not to converse with him during the hearing itself, permitting them to communicate only during breaks. *Id.*

In the Amended Complaint, Plaintiff alleges that Brown's restrictions violated an explicit contractual right and an implied one set forth in the Code of Student Conduct. First, the Code explicitly entitles John Doe to his attorney's advice "with respect to his/her testimony." As alleged in the Complaint, when he testified, John Doe was subjected to "contemptuous and outrageously irrelevant" questions from both the Hearing Panel and from Jane Doe's advisor. (¶¶135-36), and his faculty advisor was unable to represent him adequately or effectively (¶128, 130), leaving John Doe vulnerable without the benefit of his attorney's advice. Plaintiff alleges that this contractual violation was substantial and prejudicial. (¶127).

In the Amended Complaint, Plaintiff also claims that the Code of Student Conduct, as applied by Brown University, afforded him a broader right to confer quietly with his attorney throughout the entire hearing, notwithstanding language in the Code stating that the attorney "may not participate in the hearing." Plaintiff bases this claim on the way Brown University applied similar language in the Code to regulate the participation of Bita Shooshani, Jane Doe's advocate at the SCB hearing.

More specifically, the Amended Complaint alleges that Ms. Shooshani attended the hearing as the Advocate for the complaining witness (Jane Doe). (¶119). The Amended Complaint also alleges that Ms. Shooshani was permitted to sit next to Jane Doe and whisper in

her ear, including at times when Jane Doe was formulating questions to ask witnesses. *Id.* The Amended Complaint further alleges that Ms. Shooshani later stated her understating that the Code's restriction that she not "participate in the hearing" prevented her from making statements or asking questions on the record, but did not restrict Jane Doe's ability to consult with her through quiet conversation. *Id.*

Plaintiff claims that Defendant applied the Code's term "not participate in the hearing" in one (less restrictive) way for Ms. Shooshani, and a different (more restrictive) way for Attorney Dawson, thereby violating Plaintiff's contractual rights.

    C.    <u>Right to notice concerning the standard of "consent" on which sanctions could be based.</u> (¶ ¶141-156, 256-247)

John Doe's fourth and final new claim in the Amended Complaint is different from the others in that it is not based on specific language in Code of Student Conduct or Investigative Guide; instead, it is based on the absence of specific language. In his fourth claim, Plaintiff challenges the authority for Defendant to sanction him for allegedly violating a standard that it did not clearly define; indeed, it did not define the standard at all. More specifically, he challenges whether Brown lawfully can sanction him for "nonconsensual" sexual contact with Jane Doe when (a) the Code of Student Conduct does not define "consent" and (b) he believed he had obtained "consent" based on a reasonable understanding of the term, as supported by some materials distributed by the University.

John Doe enrolled in Brown University in the Fall of 2013, and Brown University subjected him to disciplinary proceedings during the Fall of 2014, his sophomore year based on the 2014-15 version of the Code of Student Conduct. *See* ¶ ¶10-11 *and* Exhibit A. These dates partially overlap with the facts developed in the *John Doe 2* case, 210 F.Supp. 3d 310 (D.R.I.

12

2016) which the Court tried in the summer of 2016. At that time, the Court found that the 2014-15 Code of Student Conduct did not contain a definition of consent. *Id.*, 210 F.Supp. 3d 310 at 333. Instead, the Court found that Brown University applied "existing community standards" to define that term for disciplinary proceedings. *Id.* The Court noted the University referred to a video entitled "Brown students ask for consent. *Id.*, noting Trial Exhibit 46. *See also* Trial Exhibit 43 (1-page slide based on the video).

In the Amended Complaint, Plaintiff alleges that he obtained Jane Doe's consent for their entire encounter that night, including when he "fingered" her. He based his belief in part upon their passionate kissing and touching leading up to that point. ¶15. He also based his belief upon her verbal consent, when he asked her "Do you like this?" and she nodded and responded "Yes," guiding his hand with hers, asking her to rub her a certain way, and later appearing to achieve orgasm. ¶17.

In the Amended Complaint, Plaintiff alleges that he believed that Brown University's standard for permissible consent included that which was obtained from non-verbal signals before the fact and subsequent verbal affirmation. The Amended Complaint alleges that Plaintiff's belief was supported by some of the same University materials presented as exhibits in the *John Doe 2* case. For example, the Amended Complaint alleges that the Brown students ask for consent contains a section of "How do you ask for consent?" which includes the following examples:

    a. Is this OK?

    b. Are you comfortable with this?

    c. Do you like it when I touch you there?

*See* ¶147. The Amended Complaint further alleges that the University distributed a handout around the same time based on the video, in which "Do you like this?" is offered as an appropriate way to obtain consent, exactly the words Plaintiff used. *See* ¶148.[4] A common feature of all of these encouraged forms of asking for consent is that the request comes <u>after</u> a particular form of contact, rather than before.

The Amended Complaint alleges that the Student Conduct Board applied a different standard of consent at Plaintiff's hearing, one in which clear verbal consent in advance was a rigid requirement. It alleges that one Board member, Yao Liu, discounted Plaintiff's reliance on his "Do you like it?" question to Jane Doe and her positive answer by saying "that was post." ¶151. The Amended Complaint further alleges that the Student Conduct Board Chair, Professor Schultz went further, saying that, under her interpretation of the unwritten "community standards" for consent, Plaintiff had to "pause and talk" with Jane Doe and obtain her explicit verbal consent. ¶152. Based on these allegations, Plaintiff claims that he was charged, tried and punished on the basis of a standard of conduct that (a) was not specifically defined, and (b) was essentially created by the hearing panel on the spot in contradiction to other standards approved and promoted by the University. As a result, Plaintiff claims he did not agree (nor could he reasonably have been expected to agree) to the contractual terms on which his sanction was based.

---

[4] The video was marked as Exhibit 46 in the *John Doe 2* trial, and the section "How do you ask for consent?" appears around the 3 minute mark. The flyer was marked as Exhibit 43.

III.	Conclusion

Through review of the Court's decision on Defendant's Motion to Dismiss, the information developed from discovery and the Court's ruling in the *John Doe 2* trial, Plaintiff seeks to amend the Complaint filed in this action to add four new contract-based claims. Because leave to amend is freely granted when justice requires, and because the new claims are not futile, Plaintiff submits he meets the legal standard for the Motion to be granted.

|  |  |
|---|---|
|  | Respectfully submitted,<br>Plaintiff John Doe,<br>By his attorneys,<br><br>NESENOFF & MILTENBERG, LLP<br>*Attorneys for Plaintiff John Doe*<br><br>By:<br>/s/ Tara J. Davis, Esq.<br>/s/ Andrew T. Miltenberg_____<br>Andrew T. Miltenberg, Esq.(admitted *pro hac vice*)<br>Tara Davis, Esq. (admitted *pro hac vice*)<br>363 Seventh Avenue, Fifth Floor<br>New York, New York 10001<br>(212) 736-4500<br>tdavis@nmllplaw.com |
| October 16, 2017 | amiltenberg@nmllplaw.com |
|  | -and-<br><br>local counsel for Plaintiff John Doe,<br><br>By: /s/ Samuel D. Zurier<br>Samuel D. Zurier, Esq. (Bar No. 3576)<br>55 Dorrance Street, Suite 400<br>Providence, RI 02903<br>(401) 861-0200<br>sdz@zurierlaw.com |

October 16, 2017

CERTIFICATE OF SERVICE

      I hereby certify on this 16th day of October, 2017, I served a copy of this Memorandum on Defendants' counsel via the Court's CM/ECF system.

            /s/     Samuel D. Zurier, Esq.