# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

------------------------------------------------------------X

| | |
|---|---|
| **JOHN DOE,** : | **Civ. No. 15-cv-00144-S-LDA** |
| : | |
| **Plaintiff,** : | |
| : | |
| -against- : | |
| : | |
| **BROWN UNIVERSITY** : | |
|   in Providence in the State of Rhode Island : | |
|   and Providence Plantations, : | |
| : | |
| **Defendant.** : | |

------------------------------------------------------------X

## PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO SUPPLEMENT EXPERT REPORT OF ROBERT SANDY, Ph.D.

Plaintiff John Doe submits this Reply Memorandum in further support of his Motion to supplement the report of his expert economist Robert Sandy, Ph.D. and in response to the Objection filed by Brown University (CM/ECF 101-1).

As argued in further detail below, the first two proposed supplements to Mr. Sandy's report add to his calculations of "full value" lost earnings with an adjustment for the probabilities of certain career scenarios for Plaintiff provided by two other experts, Suzanne Miller, M.D. and Nicholas Theodore, M.D.  While these supplements expand upon the information in Mr. Sandy's report, they do not contradict the essential analysis he performed there.  The other two supplements correct issues in damages that did not involve the same level of economic analysis as the earnings projections and therefore are less essential.  Also, all of these supplements were provided while expert discovery was still ongoing, with the opportunity for Defendant to examine Mr. Sandy regarding these supplements in a follow-up deposition, which opportunity Defendant declined to exercise.

1

A.     Prior Fact Discovery (Objection, pp. 5-6)

Defendant is correct to note that Plaintiff produced some of the documentation for the

factual assumptions underlying Mr. Sandy's testimony after the close of factual discovery.

While this sequence did not comply with the Court's scheduling order, it generally provided

Defendant an adequate opportunity to examine Mr. Sandy at his deposition about the central

parts of his expert analysis.

In reviewing Defendant's claims of shortcomings in Plaintiff's discovery responses, it is

only fair for the Court to consider Defendant's discovery shortcomings.  For example,

Defendant's production of documents has been piecemeal and haphazard, resulting in the

following supplementations after its initial production in June, 2016:

- August 29, 2016:           174 pages (2½ months after initial production)

- September 26, 2016:        242 pages  (3 months after initial production)

- October 27, 2016          55 pages (4½ months after initial production, in compliance with a court order to produce after granting Plaintiff's motion to compel CM/ECF 53)

- December 14, 2016         8  pages (six months after initial production)

- December 16, 2016         4 pages (six months after initial production)

- February 1, 2017:          142 pages (almost eight months after initial production, in compliance with a 1/12/17 court text order to produce after granting Plaintiff's motion to compel)

- February 7, 2017:          142 pages (eight months after initial production)

- May 12, 2017:             102 pages (more than 11 months after initial production)

2

Within this general pattern, certain issues were more difficult for Plaintiff to deal with than others.  For example, some of the supplements were the result of a "cat and mouse" exchange whereby Plaintiff would notice a deficiency, bring it to Defendant's attention, only for Defendant to have to supplement, raising a question regarding the completeness of the rest of Defendant's production.  *See* Exhibit A (providing Marylou McMillan documents in response to request of Plaintiff's counsel).  Another time, Defendant failed to supplement until more than two months after a key witness named in the late-produced documents testified at her deposition.[1]  The December 16, 2016 production, ostensibly of Professor Schultz's four pages of notes from Plaintiff's Student Conduct Board hearing (*see* Exhibit C), probably was missing a key fifth page.  Defendant produced this page in response to an order from the Court to produce materials from the *John Doe 2* case, as described in a previous memorandum Plaintiff filed with the Court.   *See* CM/ECF 89, pp. 8-9, n. 6.  When Plaintiff's counsel tried to enlist Defendant's cooperation in correcting this discovery gap informally (*see* Exhibit D), Defendant did not respond.  Plaintiff plans to work around the problem at trial.

In short, Defendant's discovery inadequacies go beyond the garden variety "gamesmanship" of excessive objections that the Court overruled when granting portions of Plaintiff's two Motions to Compel, to include excessive and occasionally untimely supplementations that were not properly explained.  These shortcomings have complicated Plaintiff's investigation, but he has accepted them as part of the rough and tumble of the civil discovery process.  In the context of this Motion to Supplement, Plaintiff submits the Court

---

[1]     *See* Exhibit B (Meisel documents), produced on May 12, 2017.  This production, which included correspondence between Mr. Meisel and Vice President Klawunn concerning the handling of John Doe's appeal, came more than two months after the conclusion of the deposition of Vice President Klawunn, who had left Brown University and testified from her new home in California.

should consider Defendant's discovery missteps as part of the "history of the litigation" (*see* pp.

10-11, *infra*, quoting *Esposito v. Home Depot*, 590 F.3d 72, 78 (1st Cir. 2009)) when assessing

the proper disposition of and remedy for Plaintiff's motion.

    B.    <u>Issues raised at Mr. Sandy's deposition (Objection, pp. 6-17)</u>

        1.    <u>Supplements 1, 2: Expected value calculations (Objection, pp. 7-10)</u>

Plaintiff does not deny that Defendant conducted a skillful examination at Mr. Sandy's

deposition that revealed potential challenges at trial to his conclusions.  With that said, the

Objection overstates the degree to which Mr. Sandy's deposition testimony diverged from his

report.  More specifically, at page 1 of his report, Mr. Sandy stated the following:

> The reduction in the probability that John Doe will be able to gain entry into a medical
> school is addressed in the report of the expert on medical school admissions, Suzanne M.
> Miller, MD. The reduction in the probability that John Doe would become a
> neurosurgeon assuming he had not been suspended by Brown and had graduated medical
> school is addressed in the report by an expert on neurosurgery residency programs,
> Nicholas Theodore, MD. I have not incorporated any probabilities into my lost earnings
> estimates. My entire focus is on the value of John Doe's lost earnings.

Defense counsel picked up on this language and, at his deposition, Mr. Sandy was forthcoming

about what he meant by the term "lost earnings estimates" – namely the difference between

projected earnings streams.  He acknowledged that a further adjustment at trial would be

necessary for the probability of each of those earnings scenarios to take place.  Supplements 1

and 2 provide the backup for one set of calculations, but others may be appropriate depending

upon (a) how the jury evaluates the expert testimony of Drs. Miller and Theodore and/or (b)

rulings from the Court regarding the admissibility and/or restrictions upon their testimony.

The purpose of an expert report is to inform an opponent of the expert's framework for

testifying, but it is understood that trial testimony may diverge from the four corners of the

report.  For example, Defendant could have engaged its own economist to challenge such expert

4

judgment calls as the choice of comparable earnings data or the discount rate.  Had Defendant

taken this step, Plaintiff would have asked Mr. Sandy to testify at trial in response to the

testimony of Defendant's expert.  Mr. Sandy would not be limited by the content of his report.

While Plaintiff believes that Mr. Sandy could cover much of this material regarding expected

values at trial with or without a supplement to his report, Plaintiff has concluded the better

course is to reveal this through Supplements 1 and 2 with the opportunity for Defendant to

depose Mr. Sandy on their content.

### 2. Out of pocket costs – broker's fee (Objection, pp. 10-11)

In this portion of Mr. Sandy's deposition, Defendant inquired about whether the amount

Plaintiff paid for rent was excessive, and whether Mr. Sandy's report should have been correct in

the matter of a second $2,591 broker's fee.  The first inquiry was not resolved at the deposition,

as Mr. Sandy had not researched the issue of New York City rental market, and the second one

required an adjustment that is easy enough to make.  Plaintiff acknowledges these shortcomings;

however, Plaintiff also asks the Court to view them in context – perhaps Defendant could have

avoided some of its supplementations of document production had it paid more attention, and

had it been more responsive to Plaintiff's specific requests.

### 3. Delay of two years (Objection, pp., 12-13)

Mr. Sandy's review of the costs due to Plaintiff's lost time was inconsistent.  Plaintiff

provided Mr. Sandy with a partial chronology indicating that he initially enrolled at Brown

University in September, 2013, attended three semesters there (through December 2014), and

then enrolled at his transfer school in September, 2016.  Exhibit E (under seal).  This information

implied that John Doe enrolled at Brown University as part of the Class of 2017, providing a

baseline for "lost time" analysis.

Though he did not realize it at the time he wrote his report, Mr. Sandy had before him data suggesting that John Doe would graduate as early as the Spring of 2018, one year after his original planned graduation date from Brown University.  More specifically, Mr. Sandy calculated John Doe's rent and tuition expenses at his new school on the assumption he was staying there for twenty-four months.  *See* CM/ECF 98-1 (Sandy Report), p. 3  Putting this together with John Doe's starting date of September, 2016 at his new school, Mr. Sandy could have concluded that John Doe would actually graduate as soon as the Spring of 2018, without the need to enroll for another semester.[2]  In this way, Supplement 3 corrects an error Mr. Sandy made when putting together disparate information provided to him by the client.

The issue of John Doe's earnings during 2016 before returning to school admittedly could have been addressed before Mr. Sandy's deposition, just as Defendant should have provided the emails between Mr. Meisel and Ms. Klawunn before Ms. Klawunn testified at her deposition.  With that said, Supplements 3 and 3A remedy these issues and Defendant will suffer no prejudice, particularly if Defendant chooses to re-depose Mr. Sandy (for which Plaintiff is willing to incur the expense).

C.    Plaintiff's Post-Deposition Actions (Objection, pp. 13-15).

When the parties reached the agreed-upon concluding time for Mr. Sandy's deposition, the session was not adjourned, but instead was suspended.  *See* CM/ECF 98-2, p. 114.  This left Plaintiff with the opportunity to question Mr. Sandy.  Later, Defendant elected not to continue the deposition and Plaintiff elected to schedule Mr. Sandy's return.  More than one week prior to

---

[2]      On the other hand, on the same page of his Report, Mr. Sandy stated John Doe needed "five academic-year semesters plus one summer semester", implying a graduation in the winter of 2018.  CM/ECF 98-1 (Sandy Report), p. 3.  Under this scenario, John Doe's lost time would be a year and a half.

the last scheduled date of his deposition, Plaintiff forwarded four supplements to Mr. Sandy's report to cover during the session.  When Defendant's counsel asked Plaintiff's counsel to describe the purpose of the continued deposition, this writer stated that the deposition had two purposes, namely to explain the material in the supplements, <u>and to allow Defendant the opportunity to question Mr. Sandy about them.</u>[3]  This amounted to a proposal to implement by agreement what Plaintiff's research had identified as the typical remedy courts provide when presented with this type of situation.  *See  Probate Court of the City of Warwick ex rel. Lawton v. Bank of America Corp.*, 2010 WL 1508922 at \*6, *Providence Piers, LLC v. SMM New England*, 2014 WL 5775663 at \*6.  Defendant stated its preference to have the Court decide this Motion first.  Given Defendant's position, Plaintiff did not continue the deposition.

D. <u>The Supplements to Sandy's Report (Objection, pp. 15-16).</u>

Plaintiff agrees with Defendant's description of Supplement 1, which adds a row with tabulated totals to existing tables in the Report, using methods and data presented in the Report.

With regard to Supplement 2, Plaintiff submits that Mr. Sandy is providing a preview of how he might address questions that arise during trial following the expert testimony of Drs. Miller and Theodore.  As previously noted, the first page of Mr. Sandy's report candidly acknowledges that his presentation does not incorporate probabilities.  As noted in Supplement

---

[3] For this reason, Defendant's description (Objection, p. 3) of Plaintiff's offer to re-depose Mr. Sandy as directed towards the goal of conducting "a scripted deposition" is at best incomplete.  By not providing a complete description to the Court of this writer's statement, Defendant violated the standard of candor it establishes for Mr. Sandy at Objection, p.16 when it chides him for not telling "the full and accurate story" when Mr. Sandy states a correction was based on what he learned after completed his report (which was true), rather than saying after his deposition which was even later.  While the full record on Mr. Sandy's revision is more complex, this writer is disappointed with the Objection's incomplete and unfairly abridged description of communications between counsel.

2, Dr. Miller's expert report contains a number of probabilities that may or may not be challenged at trial.  If Defendant had engaged its own expert who testified on these issues, then Mr. Sandy would have the latitude to testify at trial concerning them.  Because Defendant did not make that choice, the provision of Supplement 2 combined with the opportunity to examine Mr. Sandy provide a non-prejudicial remedy.

With regard to Supplements 3 and 3A (lost time), Plaintiff described at pp. 5-6 *supra* the mixed record on this issue Mr. Sandy had when he wrote his report, and which appears in the report.  Supplements 3 and 3A iron out these discrepancies.

With regard to Supplement 4 (additional education costs), Mr. Sandy identified an error in his report that Defendant did not, namely that Mr. Sandy had failed to include an offset for the savings John Doe realized by not paying Brown University tuition and fees during the first term of his suspension (Spring semester, 2015).  This was a major amount, and confirms that Mr. Sandy wanted to correct errors in his report regardless of whether Defendant had spotted them and regardless of how they affected Plaintiff's damages claim.

III.     Argument (Objection 17-20)

Defendant accepts the legal framework of the two cases Plaintiff cites on this subject previously decided by this Court, *see Probate Court of the City of Warwick ex rel. Lawton v. Bank of America Corp.*, 2010 WL 1508922, *Providence Piers, LLC v. SMM New England*, 2014 WL 577566, adding (Objection, p. 18) a case authority from another jurisdiction that reaches the same holding (*see Richardson v. Korson*, 905 F.Supp.2d 193 (D.D.C. 2012) (granting  motion to supplement expert report following close of discovery while imposing remedy of permitting deposition of expert at expense of movant).

Plaintiff submits that the record currently before this Court is similar to those in *Probate Court, Providence Piers and Richardson,* in all of which the court granted the motion to supplement; furthermore, a key distinction between the records in those case holdings and the one at bar argues further in favor of granting the instant Motion.  In *Probate Court*, the movant sought to supplement the expert report not only after the expert's deposition, but also after the close of expert discovery, while both this Motion and the scheduled deposition Defendant declined to attend took place prior to the close of expert discovery.  While there was no expert deposition in *Providence Piers*, the supplementation also came after the Defendant notified Plaintiff of the shortcoming in the expert report and after expert discovery had closed.  While the record in *Richardson* is not entirely clear, Plaintiff reads it to be even more extreme, in which the movant learned about the flaw in his expert's report when the Defendant moved for partial summary judgment, and who moved to supplement to address the flaw identified in the defendant's motion.  When the defendant in *Richardson* contended it would have hired its own expert had it known of Plaintiff's opportunity to supplement, the Court allowed Defendant that option as part of its remedy in which the Motion to Supplement was granted.  *See Richardson, supra*, 905 F.Supp. 2d at 197-201.[4]

While largely fact-based, this Court's analysis in *Probate Court* and *Providence Piers* applied a five-part framework of *Esposito v. Home Depot U.S.A., Inc.,* 590 F.3d 72, 78 (1st Cir.2009), in which the First Circuit directed courts to consider

> a host of factors, including: (1) the history of the litigation; (2) the sanctioned party's need for the precluded evidence; (3) the sanctioned party's justification (or lack of one) for its late disclosure; (4) the opponent-party's ability to overcome the late disclosure's

---

[4]     Plaintiff will not object in the event that Defendant decides it needs to engage its own economist at this point due to the supplementation of Mr. Sandy's report.

adverse effects-e.g., the surprise and prejudice associated with the late disclosure; and (5) the late disclosure's impact on the district court's docket

*Id.*  We now consider these factors in turn:

      1.      <u>History of the litigation</u>

The scope of the first *Esposito* factor is broad, and Defendant has extended its presentation beyond Mr. Sandy's deposition to include Plaintiff's response to factual discovery. With that said, Plaintiff's motion to supplement came at a time when expert discovery was still open, a timeliness factor supporting the pending motion that was not present in the record of any of the three cases (*see Probate Court, Providence Piers and Richardson, supra*) in which the court granted the movant leave to supplement.

Fairness requires the Court also to consider Defendant's conduct in reviewing "the history of the litigation."  Plaintiff previously described flaws in Defendant's discovery responses (*see* pp. 2-3, *supra*), which in some instances detracted from Plaintiff's ability to investigate his case during discovery.  To this list, Plaintiff must add another misstep by Defendant which appeared in its Memorandum in Support of Motion to Dismiss (CM/ECF 10). That document provided the following description of how Defendant honored Plaintiff's contractual due process right to receive the case materials for his Student Conduct Board hearing at least seven (7) days in advance:

> The Student Conduct Board's pre-hearing procedures require that the case administrator (Dean Castillo) provide a copy of the available case materials to the respondent (Plaintiff) at least seven days before the hearing, which she did on November 5, 2014.

*See*  CM/ECF 10-1, p. 37 of 41 (numbered "31" at the bottom of the page).  This description was inaccurate, because Dean Castillo's November 5, 2014 transmission did <u>not</u> include certain available case materials (namely the Womens and Infants Hospital records) that (a) Defendant

obtained on or before November 3 (Exhibits F, G), (b) became part of the case materials the

Student Conduct Board reviewed at Plaintiff's November 21, 2014 hearing (Exhibit H), but (c)

were not provided to Plaintiff until November 17, 2014 (Exhibit I).

This inaccuracy was particularly troubling, because it presented a description of facts (i)

to which only Defendant had access at the time, (ii) as part of a motion seeking to dismiss the

case without discovery, and (iii) on which the Court based a portion of its decision.  Later, when

Plaintiff learned in discovery that Defendant obtained a copy of the Womens and Infants records

on or before November 3 (but failed to distribute them to Plaintiff until November 17), he moved

to amend his Complaint to incorporate this and other information.  Defendant objected because

the amendment was out of time, and the Court denied the Motion.  While Defendant had the

right to assert its objection (and the Court's ruling denying the motion was lawful), the

underlying problem could have been avoided had Defendant been more accurate and

forthcoming with Plaintiff and with the Court in its Memorandum in Support of Motion to

Dismiss.  For these reasons, the above-quoted passage in Defendant's Memorandum in Support

of Motion to Dismiss is a counterexample to the Objection's assertion in its third sentence

(CM/ECF 101-1, p. 1) that "Brown has not done anything to interfere with Plaintiff's ability to

obtain [a fair trial]."

Plaintiff submits that this history of the litigation weighs in favor of granting the motion

to supplement.

2.     The sanctioned party's need for the precluded evidence

As Defendant acknowledges (Objection,  p. 20), all of these supplements reduce

Plaintiff's damages claim, rather than increase it.  Rather than welcome this reduction, Defendant

objects, apparently in anticipation of a motion challenging "the propriety and admissibility of

Plaintiff's highly speculative claim, ...  especially where Sandy has acknowledged that such damages, if awarded, could result in a substantial windfall to Plaintiff." *Id.*

Plaintiff does not question Defendant's right to challenge the admissibility of Mr. Sandy's testimony as supplemented, at which time Plaintiff will respond and the Court will decide.  That, however, is a different matter than what the above-quoted passage from the Objection portends.  In his deposition, Mr. Sandy testified that expected value analysis provides an accepted way to deal with uncertainty, both in terms of the "upside" and the "downside" of different scenarios to which different probabilities are assigned.  In this sense, Plaintiff needs Mr. Sandy to be able to discuss probabilities and expected values in order to respond to the anticipated motion to preclude his testimony.

At p. 18 of its Objection, Defendant appears to argue that Plaintiff's "need" to supplement Mr. Sandy's testimony is mitigated by the Complaint's claim in the alternative for injunctive relief.  The Objection's premise that a single complaint seeking damages and injunctive is improper because it "Plaintiff cannot have it both ways" (Objection, p. 19) is simply off base.  Parties plead in the alternative all the time, and the decision on Plaintiff's claim for injunctive relief will be decided by the Court, while his claim for damages will be decided by the jury.  A decision to preclude Mr. Sandy's testimony will decimate his damages claim, and for that reason severely compromise his case as a whole.

3. <u>The sanctioned party's justification (or lack of one) for its late disclosure</u>

Mr. Sandy's report presented the actual difference in earnings streams between three different possible careers for John Doe, discounted to present value.  A jury could hear the expert testimony of Dr. Miller and Dr. Theodore, and on that basis decide which of these career paths John Doe was most likely to pursue both before and after the suspension.  In that sense, Mr.

Sandy's initial report presented a starting point for calculating John Doe's lost earnings, which could be adjusted by a jury based on cross-examination and/or an opposing expert.

It was on this basis that Plaintiff submitted the report without making an adjustment for expected values, which then could be made at trial.  Given that Defendant did not engage an expert and chose to emphasize the issue of expected values at the deposition, Plaintiff concluded this was likely to arise at trial and therefore it would be appropriate to supplement Mr. Sandy's report (Supplements 1, 2) in order to increase Defendant's opportunity to prepare.  Supplements 3A and 4 address issues that were highlighted at Mr. Sandy's deposition, but admittedly could have been addressed previously.

4.   <u>The opponent-party's ability to overcome the late disclosure's adverse effects-e.g., the surprise and prejudice associated with the late disclosure</u>

Plaintiff believes that a resumption of Mr. Sandy's deposition will provide a complete cure to any prejudice resulting from the supplements.

5.   <u>The late disclosure's impact on the district court's docket</u>

The parties currently are briefing cross-motions for summary judgment on the issue of liability.  The briefing schedule continues until February 16, 2018, at which time the Court will take them under advisement.  As a result, there is ample time to remedy Plaintiff's late disclosure without disrupting the Court's docket.

IV.   <u>Conclusion</u>

For these reasons, Plaintiff respectfully submits that the Motion to Supplement should be granted, accompanied by any appropriate conditions the Court prescribes to remove prejudice to Defendant.

Respectfully submitted,
Plaintiff John Doe,
By his attorneys,

NESENOFF & MILTENBERG, LLP
*Attorneys for Plaintiff John Doe*

By: /s/ Andrew T. Miltenberg
Andrew T. Miltenberg, Esq.(admitted *pro hac vice*)
Tara Davis, Esq. (admitted *pro hac vice*)
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
tdavis@nmllplaw.com
December 29, 2017        amiltenberg@nmllplaw.com


-and-

local counsel for Plaintiff John Doe,

By: /s/ Samuel D. Zurier
Samuel D. Zurier, Esq. (Bar No. 3576)
55 Dorrance Street, Suite 400
Providence, RI 02903
Tel: (401) 861-0200
Fax: (401) 861-2922
sdz@zurierlaw.com

December 29, 2017

<u>CERTIFICATE OF SERVICE</u>

I hereby certify on this 29th day of December, 2017, I served a copy of this Motion on Defendants' counsel via the Court's CM/ECF system.


/s/   Samuel D. Zurier, Esq.

14