UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

---------------------------------------------------------------X
JOHN DOE,                                   :
                                            :   Civil Action No. 1:15-cv-144
                         Plaintiff,         :
                                            :
         -against-                          :
                                            :
BROWN UNIVERSITY,                           :
in Providence in the State of Rhode Island  :
and Providence Plantations,                 :
                                            :
                         Defendant.         :
---------------------------------------------------------------X

**PLAINTIFF JOHN DOE'S REPLY MEMORANDUM IN FURTHER SUPPORT OF
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff John Doe submits this Reply Memorandum in further support of his Motion for Partial Summary Judgment, and in response to the arguments made in Defendant Brown University's February 23 Response Memorandum (CM/ECF 115-1).

A.  Compliance with Local Rule 56
    (CM/ECF 115-1, pp. 2-4)

In support of its Motion for Partial Summary Judgment, Defendant filed a Local Rule 56(a) Statement of Undisputed Facts (CM/ECF 95). With his Objection and supporting Memorandum, Plaintiff filed a Local Rule 56(a)(3) Statement of Disputed Facts and Inferences (CM/ECF 107), responding, as the Local Rule requires, to the specific paragraphs listed in Defendant's statement. In its original Memorandum in Support of Motion for Partial Summary Judgment (CM/ECF 94-1 at p. 14), Defendant asserts that "none of [Plaintiff's] various and far-reaching theories articulated in his Complaint and throughout discovery are sufficient to raise any genuine issue of material fact showing any intentional gender bias against him." Consistent

1

with this position, Defendant had the opportunity to add a corresponding statement as a paragraph in CM/ECF 95, perhaps stating that "Defendant did not engage in gender discrimination," or "The record contains no evidence of intentional gender bias," etc. Had Defendant included such a paragraph in its Statement of Undisputed Facts (CM/ECF 95), Plaintiff would have disputed it, and responded point-by-point in CM/ECF 107, complete with exhibits and references to the record. On the other hand, because Defendant's Memorandum disputed the existence of evidence of gender discrimination (*see* CM/ECF 94-1 at p. 14), Plaintiff's presentation of such evidence in his Memorandum (with supporting exhibits) did not qualify as "additional undisputed facts" contemplated by a Local Rule 56(a)(4) supplemental statement.

Plaintiff acknowledges the Web of Caring article could have been limited to the relevant pages in accordance with the Local Rule but submits that the specific citations in the Memorandum minimize the reader's time. On the other hand, Plaintiff intended to introduce the expert reports in full. Other exhibits (such as deposition testimony) were properly excerpted.

B. <u>Plaintiff Does Not Rely on Inadmissible Hearsay</u>
(CM/ECF 115-1, p. 4)

Defendant's discussion of potential hearsay issues paints with too broad a brush, as many of the newspaper and internet articles were not offered for the truth of the information reported in the article. Instead, this information was offered for the purpose of demonstrating the media attention garnered by activism on Brown's campus and the response thereto, as this type of information can be germane to a Title IX "erroneous outcome" case. For example, in *Doe v. Columbia University*, 831 F.3d 46, 50-51 (2d Cir. 2016), the Second Circuit referred to a New York Post article that quoted several female students upset with the University's disciplinary procedures, thus providing an (alleged) evidentiary foundation for the claim that the University

had been "severely criticized in the student body and in the public press for toleration of sexual assault of female students", leading Columbia to "accept the female's accusation of sexual assault and reject the male's claim of consent, so as to show the student body and the public that the University is serious about protecting female students from sexual assault by male students . . . " *Id.*, 831 F.3d at 57. Similarly, Plaintiff here presents various newspaper and internet articles critical of Brown's handling of sexual misconduct cases, which led to reforms in Brown's policies and to administrators taking a tougher stance against male respondents.

    C.    Specific Breaches of Contract
           (CM/ECF 112-1, pp. 64-81; CM/ECF 115-1, pp. 13-20)

        1a.    Dean Castillo Lacked Authority to Issue an Order Restricting John Doe to His Dormitory Room
             (CM/112-1, p. 66; CM/ECF 115-1, p. 14)

The parties do not dispute that Dean Castillo lacked explicit authority under the Code of Student Conduct to restrict John Doe to his dormitory room; instead, Defendant maintains Dean Castillo acted within her "discretion." While Rhode Island contract law grants a private educational institution "sufficient discretion to properly exercise its educational responsibilities" when formulating policies and procedures, *see Gorman v. St. Raphael Academy*, 853 A.2d 28, 34 (R.I. 2004) (quotation omitted), this discretion is not limitless. A Rhode Island educational institution does not have a "get out of jail free card" to violate the actual policies and procedures it exercises its "sufficient discretion" to formulate. *Doe v. Brown University*, 210 F.Supp. 3d 310 (D.R.I. 2016). Moreover, a Rhode Island educational institution is bound by the student's reasonable expectations as to how the policy will be implemented. *See John Doe v. Brown University, supra,* 210 F.Supp. 3d at 330 (D.R.I. 2016).

Here, the Code states clearly what the University can and cannot do. The Code does not grant Dean Castillo any discretion to conceive, enact and impose her own supplementary

restrictions. Such an unstated and undefined discretionary loophole could potentially swallow up all of the specific protections outlined elsewhere in that contractual document. *See also John Doe v. Brown University*, *supra*, 210 F.Supp. 3d at 330 (D.R.I. 2016) (under Rhode Island law, ambiguous contract language is interpreted against the drafter). Also, even if one were to assume, contrary to Rhode Island contract law, that such discretion could be implied, such implied authority would necessarily be constrained by the document's explicit rights. In this case, Dean Castillo had other less restrictive options available (such as a no-contact order) that she chose not to exercise, exceeding any reasonable scope of "implied" discretion.

    1b.    <u>Defendant's Decision to Expedite the Student Conduct Board Hearing Was An Abuse of Discretion.</u>
(CM/ECF 112-1, pp. 66-68; CM/ECF 115-1, p. 15)

In seeking to justify Defendants' decisions to expedite John Doe's hearing to occur only 35 days after Jane Doe filed her complaint, and to refuse his requests for an extension within the 60 days allowed under the Code of the Student Conduct, Defendant refers to page 11 of the Code. This section lists the "salient factors" to be considered before granting an extension of the hearing date <u>beyond</u> the 60 days normally permitted. Defendant misreads its Code, because that section by its own terms applies only to extensions beyond the 60-day permitted window, not when, as was true here, the extension sought another date within the 60-day permitted window.

    2.    <u>Vice President Klawunn's Lack of Authority to Order Plaintiff's Interim Removal from Campus</u>
(CM/ECF 112-1, pp. 68-70; CM/ECF 115-1, p. 16)

There is no dispute that Vice President Klawunn lacked the authority to order Plaintiff's interim removal from campus. Defendant mischaracterizes the factual record in arguing that Vice President Klawunn assumed the responsibilities of Senior Associate Dean for Student Life. Without referring to the Brown Daily Herald article describing Senior Associate Dean Ward's

4

transition from his position at Brown University in January 2015, the record of undisputed facts includes the following:

- a. Vice President Klawunn did <u>not</u> testify that Senior Associate Dean Ward left his position in the Fall, 2014 semester; instead, she testified he was "in the process of" leaving. Exhibit 1 (filed under seal) (Klawunn deposition, p. 100).

- b. The Code of Student Conduct allows the Senior Associate Dean to designate someone to fulfill his or her responsibilities (CM/ECF 112-8 at p. 10, n. 2), but Vice President Klawunn did not claim to be his designee. She also did not present herself to Plaintiff as "Acting" or "Interim" Senior Associate Dean. Instead, she signed the removal letter as "Vice President of Campus Life and Student Services." (CM/ECF 113-27).

- c. The Code of Student Conduct explicitly permits the Dean of the College and the University President to order interim removals (CM/ECF 112-8 at p. 11); but does not list the Vice President for Campus Life as a permitted alternative.

Given the specificity of the Code of Student Conduct and the numerous alternatives it presents for cases when a particular University official is unavailable, it is apparent that the drafters of the Code intentionally identified five individuals they deemed qualified to perform the task of issuing a removal order. The Court should therefore reject as a matter of law Defendant's effort to justify Vice President Klawunn's removal order by claiming an implied authority that was not written into the Code of Student Conduct. *See also John Doe v. Brown University*, 210 F.Supp. 3d 310, 330 (D.R.I. 2016) (under Rhode Island law, ambiguous contract language is interpreted against the drafter).

### 3. Defendant's Lack of Response to Plaintiff's Requests for Information (CM/ECF 112-1, pp. 70-72; CM/ECF 115-1, pp. 16-17)

In its previous decision on Brown's Motion to Dismiss, the Court noted the clarity and broad scope of this provision of the Code of Student Conduct, stating the following:

> Brown chose to write its policy to state that the case administrator "will respond" to the respondent's requests; now it must live with that promise.

*Doe v. Brown University*, 166 F.Supp.3d 177, 194 (D.R.I. 2016).

5

On or around October 25, 2014, Dean Suarez sent an email to Dean Castillo forwarding John Doe's request to clarify the definition of "investigation" and to provide a step-by-step description of the actions Defendant took "from the time the allegation was submitted to time [Plaintiff] was contacted." Dean Castillo sent an email to John Doe purporting to answer his questions. The parties agree on the exact correspondence, which is viewable at CM/ECF 110-7. (*Compare* CM/ECF 109, 18-19 *with* CM/ECF 116, 18-19, documenting agreement on these facts.) In a reply email, Dean Castillo answered both inquiries by referring Plaintiff to pages 9-12 of the Code of Student Conduct (CM/ECF 109-2, pp. 10-13) which as noted does not define the term "investigation" and has absolutely nothing to say about the specific steps Defendant actually took prior to contacting Plaintiff.

Moreover, by email dated November 11, 2014, John Doe emailed Dean Castillo to inquire about the submission of character statements from witnesses (CM/ECF 113-64); by email dated November 15, 2014, John Doe emailed Dean Castillo to request copies of text messages and additional witness statements received by Defendant. (CM/ECF 113-40). Dean Castillo utterly failed to respond to either of these inquiries. CM/ECF 113-2 ¶¶ 3-4 (John Doe Affidavit).

Defendant's contractual duty requires more than a mindless presentation of unresponsive gibberish. While in theory it may be a fact finder's responsibility to distinguish between "reasonable" and "unreasonable" unresponsiveness, Defendant's failure to articulate any response whatsoever makes this case sufficiently clear to support a ruling as a matter of law.

    4.    <u>Defendant's Refusal to Allow Plaintiff A Mid-Point Statement</u>
(CM/ECF 112-1, pp. 72-74; CM/ECF 115-1, pp. 17-18)

In its prior decision, the Court also noted the clarity and scope of this provision, stating:

Once again, Brown chose to draft its Code to give students the right to "every opportunity" to "articulate relevant concerns" and "offer evidence"; now it must abide by that decision.

*Doe v. Brown University,* 166 F. Supp. 3d 177, 198 (D.R.I. 2016).

The summary judgment record indicates that Brown University sent John Doe a document before the hearing ("Timeline", CM/ECF 113-50) which identified the order of events, including an opening statement from both parties at the beginning of the hearing (CM/ECF 113-50), p. 2, and closing statements from both parties at the end of the hearing. (CM/ECF 113-50), p. 5. Additionally, the Timeline includes the following entry in the middle:

**WITNESS STATEMENT TESTIMONY BY [JOHN DOE] OR ADVISOR, MARYLOU MCMILLAN**

The record of undisputed facts shows that John Doe wanted to speak at the indicated time during the hearing but was denied this opportunity. CM/ECF 112-1 at p. 73. There are two different reasons why the Court should find this denial to be a breach of John Doe's contractual rights as a matter of law.

First, the Timeline, which was issued by Brown University, effectively became part of its contract with Plaintiff. *See Lyons v. Salve Regina College*, 575 F.2d 200, 201 (1st Cir. 1977) (reviewing contract consisting of College Manual and Academic Information Booklet). Under this theory, the contract language is clear and unambiguous – John Doe had a contractual right to make a witness statement at this time and was denied that right.

Under Rhode Island law, a court decides, as a matter of law, whether a contract's terms are clear or ambiguous. *Rotelli v. Catanzaro*, 686 A.2d 91, 94 (R.I. 1996). If the court determines the contract's terms are clear and unambiguous, then it interprets those terms as a matter of law. *Id. See also Cheaters, Inc. v. United National Insurance*, 41 A.3d 637, 642-43 (R.I. 2012) (same). For that matter, even if this particular language were ambiguous (which it is not), the court should interpret that ambiguity against the drafter. *John Doe v. Brown University*, 210 F.Supp. 3d 310, 330 (D.R.I. 2016).

Second, even if the Court concluded that the Timeline was not formally part of the contract, it constitutes a clear, unambiguous and undisputed admission of Defendant's interpretation and implementation of Plaintiff's contractual right to "articulate every relevant concern" within the context of his Student Conduct Board hearing, again permitting the Court to rule on this claim as a matter of law.

> 5. <u>Allowing Plaintiff a Reasonable Amount of Time to Prepare a Response to The Charges Against Him</u>
> (CM/ECF 112-1, pp. 74-77; CM/ECF 115-1. p. 18)

Defendant is correct in stating that, as a general matter, it is up to a jury to determine what is "reasonable." With that said, there are several factors that would cause a jury ruling in favor of Defendant on this point to enter the zone of reversible error. They include:

a. Less than four days before the hearing, John Doe was provided a voluminous and complex packet of materials containing witness statements, addendums to these statements, medical records from Women and Infants Hospital of Rhode Island, and medical records from Brown Health Services. (CM/ECF 113-21).

b. Brown had the hospital records for two weeks before disclosing them to Plaintiff. (CM/ECF 113-17, p. 19) (Castillo Deposition, p. 375).

c. Defendant forwarded case materials to Jane Doe as soon as they became available (CM/ECF 113-53, p. 3), and she could obtain her hospital records anytime she chose.

d. Defendant's stated justification is that it was waiting for the photographs. (CM/ECF 115-1, p. 18). Nothing prevented Defendant from distributing the hospital records already in its possession at an earlier date while waiting for the photographs to arrive.

e. Nothing prevented Defendant from postponing the hearing for a few weeks, given that it took place 35 days after the complaint was filed, the Code provides a 60-day window, and in practice the average window is greater than that. *See generally*, CM/ECF 112-1, p. 32 (35-day interval between complaint and hearing in John Doe's case, compared to 60-day window in Code and 81-day average window in practice).

Plaintiff submits that this particular combination of circumstances makes it impossible for a reasonable jury to find that Defendant complied with its contractual duty.

      6.      <u>Decision to Redact Favorable Character Evidence for Plaintiff (L.B.'s Witness Statement) While Admitting Unfavorable Character Testimony Concerning The "Wing Man" Incident</u>
(CM/ECF 112-1, pp. 77-80; CM/ECF 115-1, p. 19)

In its Reply (CM/ECF 115-1 at p. 19), Defendant offers a justification for its selective and inconsistent treatment of character evidence, asserting that the "wing man" incident was relevant because it described an alleged interaction in which both John Doe and Jane Doe were present. The casual and non-intimate social context in which they were involved at the time of the "wing man" incident occurred makes such a distinction untenable. Brown deprived John Doe of the opportunity to offer all relevant information when it arbitrarily excluded favorable evidence related to John Doe's character during a prior intimate encounter, while allowing unfavorable character evidence to be considered.

      7.      <u>Opportunity to Seek Disqualification of Dean Bova</u>
(CM/ECF 112-1, pp. 80-81; CM/ECF 115-1, p. 20)

Plaintiff maintains that Defendant's last-minute substitution of Dean Bova as a panelist without providing Plaintiff an adequate opportunity to object violates the spirit of the Code of Student Conduct even if it may be consistent with a hyper-literal reading. Notwithstanding his position, Plaintiff agrees, for the purpose of this cross-motion only, that it may require a finding of fact to resolve this issue.

   C.   <u>Causation</u>

In order to prevail on a breach of contract claim, Plaintiff must prove that the breaches in question caused damages. *See Doe v. Brown University, supra,* 310 F.Supp. 3d at 330. In his Memorandum in Support of Cross-Motion for Partial Summary Judgment (*see* CM/ECF 112-1,

pp. 81-84), Plaintiff presents legally sufficient evidence that the breaches described above made it impossible for him to obtain a fair hearing, and thus inevitably led to an adverse outcome. It is undisputed that Defendant's suspension (which was based on the Student Conduct Board finding) caused Plaintiff harm in the form of the interruption of his undergraduate education, and materially diminished his chances of pursuing his desired career in medicine. *See also* CM/ECF 113-51 (expert report of Suzanne Miller, M.D.). Defendant's Reply does not present a genuine issue of material fact as to these elements of Plaintiff's case.

D. Conclusion

For these reasons, Plaintiff respectfully submits that he is entitled to partial summary judgment on his Rhode Island contract law claims and on his request for declaratory relief with regard to those claims.

                                                Respectfully submitted,

                                                Plaintiff John Doe,
                                                By his attorneys,

                                                NESENOFF & MILTENBERG, LLP

                                                *Attorneys for Plaintiff John Doe*

                                                By: /s/ Andrew T. Miltenberg
                                                Andrew T. Miltenberg, Esq. (admitted *pro hac vice*)
                                                Tara Davis, Esq. (admitted *pro hac vice*)
                                                363 Seventh Avenue, Fifth Floor
                                                New York, New York 10001
                                                (212) 736-4500
                                                amiltenberg@nmllplaw.com
March 9, 2018                            tdavis@nmllplaw.com

|  |  |
|---|---|
|  | -and- |
|  | local counsel for Plaintiff John Doe, |
|  | By: /s/ Samuel D. Zurier<br>Samuel D. Zurier, Esq. (Bar No. 3576)<br>55 Dorrance Street, Suite 400<br>Providence, RI 02903<br>(401) 861-0200 |
| March 9, 2018 | sdz@zurierlaw.com |

CERTIFICATE OF SERVICE

    I hereby certify on this 9th day of March, 2018, I served a copy of this Reply Memorandum on Defendant's counsel via the Court's CM/ECF system.

    /s/    Tara J. Davis, Esq.