United States District Court
For the District of Rhode Island


John Doe,
      Plaintiff,


vs.                                         C.A. No. 1:15-cv-00144-WES-LDA


Brown University in Providence in the
State of Rhode Island and Providence
Plantations,
      Defendant


### Defendant's Memorandum of Law
### Re Plaintiff's use of "John Doe" Pseudonym
### At Trial


                                Defendant,
                                By its attorneys

Thomas R. Bender # 2799                         Steven M. Richard #4403
Associate Counsel                             Nixon Peabody LLP
Brown University                            One Citizens Plaza, Suite 500
Box 1913                                      Providence, RI 02903
350 Eddy Street                           (401) 454-1020 (Phone)
Providence, RI 02912                  srichard@nixonpeabody.com
(401) 863-5466 (Phone)
thomas_bender@brown.edu

## Table of Contents

Introduction ………………………………………………………………………… 1

Background ………………………………………………………………………… 2

    *Plaintiff Seeks Injunctive Relief Requiring Removal of a Transcript Notation* ................. 2

    *Plaintiff's Ex Parte Motion to Proceed Under a Pseudonym* ........................................... 3

Argument ...............................................................................................................................5

    I.)    The Federal Rules of Civil Procedure embody a common law and constitutionally-embedded presumption of openness in judicial proceedings, as well as a principle of fundamental fairness, that prohibit parties from invoking federal judicial power in all but the most extraordinary circumstances ................................................................5

    II.)    Doe's original basis for proceeding under a pseudonym, as a victim of a human rights violation whose physical safety would be jeopardized if his true identity was revealed, lacks sufficient evidentiary support to warrant use of a pseudonym at trial ....................................................................................................................................9

    III.)    Potential economic harm and embarrassment are insufficient bases to justify invoking the federal judicial power under a pseudonym ........................................................11

    IV.)    Doe should be required to use his true legal identity when the matter is tried before a jury: so that the jury does not infer that the court may believe that the plaintiff has suffered harm; because the predominant focus of the trial will be on the actions of Brown's agents; and so the public will be able to more fully observe and assess the court's exercise of governmental power ................................................................14

Conclusion ....................................................................................................................20

**Introduction**

Federal courts operate openly by default. There is a strong common-law and constitutionally-embedded presumption of openness in judicial proceedings, and the identities of the parties is considered an important part of that openness. It provides for public scrutiny of the exercise of governmental power by the courts. It provides the public with an opportunity to evaluate that exercise of power.

Proceeding with a lawsuit under a pseudonym is considered a "rare dispensation" to be permitted only for extraordinary reasons. Here the plaintiff has been permitted that rare dispensation since the filing of his complaint, through discovery, and pre-trial motion practice. He should, however, be required to use his true legal name at trial for three basic reasons.

First, there is the concern that the jurors may construe the Court's permission for the plaintiff to conceal his true identity as a subliminal comment on the harm Brown has allegedly caused him.

Second, the trial here will focus predominantly on the actions of Brown University's agents, and their intent if the Title IX claim is permitted to go trial, and not the details of the sexual encounter that was the basis for the disciplinary action.

Third, and perhaps most importantly, the trial of a matter is arguably the most important judicial proceeding that should be fully open to public scrutiny, to include the true identities of the parties. The reason for the strong common law and constitutionally-embedded presumption of openness of judicial proceedings is so the citizenry can view the courts exercise of governmental power, in order to assess the court's exercise of that power. Knowing the parties identities provides the public with the means to evaluate whether the law is being administered impartially and fairly from one individual to the next, without regard to power or position, and that is essential to the public's confidence that the law and justice are being administered with an even hand.

**Background**

*Plaintiff Seeks Injunctive Relief Requiring
          Removal of a Transcript Notation*

Plaintiff John Doe's complaint is premised upon student disciplinary proceedings conducted at Brown University in December 2014. As a consequence of those proceedings a Student Conduct Board determined he was responsible for: "actions resulting in physical harm to others;" "sexual misconduct: nonconsensual sexual contact;" "sexual misconduct: non-consensual sexual penetration;" and "illegal use or possession of alcohol," in violation of the Code of Student Conduct. ECF. No. 1 at 23-24. He was suspended for two and one half years, and both the disciplinary action and suspension were noted on his Brown University transcript.

This action was filed on April 13, 2015. John Doe's complaint alleges the disciplinary proceedings violated Title IX because they were conducted with bias against him because of his gender; and constituted a breach of his "educational contract" and a violation of the implied covenant of good faith and fair dealing implicit in that contract, because he was denied certain procedural rights to which he was entitled under the Code of Student Conduct. As a result Doe seeks an order in the form of an injunction that would: 1) reverse the findings made by Brown during his disciplinary process; 2) expunge any negative references from his disciplinary record; 3) remove the record of his suspension from his "education file"; and 4) permanently destroy any record of his disciplinary hearing, as well as a judicial declaration that the findings of misconduct made by Brown were erroneous, and that his "disciplinary record is clear and free of misconduct[.]" ECF No. 1 at 46.

In addition to seeking to have his academic transcript and disciplinary record 'scrubbed clean,' Doe also alleges he is entitled to compensatory damages. *Id.* He has proffered expert

witnesses who will opine on the damages he has suffered because of the delay the transcript notation, and the legal process for its ultimate removal, has caused for his admission to medical school and to his potential earnings as a physician.

But his damages experts have also opined that, assuming the transcript notation prevents him from becoming a practicing physician in his chosen field, he will experience $9.4 million in lost future income, reduced to present value, over the course of his working life through age 67. There is, however, no circumstance in which Doe would be entitled to lost future income caused by the transcript notation. If he is successful in having the transcript notation expunged from his record, his future earning capacity will not be impeded and there will be no basis for recovery of lost future income past the point in time that his record is cleared. But if Brown prevails, Doe will not be entitled to recover any damages because of the notation. Thus the entire issue of lost future damages is irrelevant to the trial of this matter, which will be predominantly about whether the transcript notation should be removed, with Doe's target audience being those persons who will be reviewing his transcript.

In short, Doe's pseudonymous action is functionally concerned primarily with his desire to have a "clean" Brown University transcript to provide to medical schools, and other medical organizations he chooses to provide it to, in furtherance of a medical career.

### Plaintiff's Ex Parte Motion to Proceed Under Pseudonym

When Doe filed his complaint in April 2015, he simultaneously filed an ex parte motion to proceed under the pseudonym, "John Doe." *see* ECF No. 2. The motion was somewhat opaquely based upon the "serious nature of the allegations" in the complaint, that Doe asserted created the "possibility of acts of reprisal that could further prevent [him] from proceeding with his college

and future endeavors, and inflict further severe physical and/or mental harm" upon him[,]" ECF No. 4-1 at 1. The ex parte motion was granted on April 17, 2015, ECF No. 4, prior to defendant Brown University's appearance in the case, and the plaintiff has been permitted to litigate his claims for the last three years under the pseudonym "John Doe," through pre-trial discovery and motion practice. Moreover, since being suspended by Brown in December 2014, and during the course of this lawsuit, Doe has applied to numerous other undergraduate schools, did in fact matriculate at another university in 2016, and graduate from that university in May 2018. Thus for each transfer application, there was both a transcript notation on his Brown University transcript and a gap in his educational record from 2014 through 2016.

With the trial of this matter scheduled for September 25, 2018, this Court recently issued a text order requiring "the parties to submit briefing on the issue of whether the trial should be conducted using pseudonyms[.]" For the reasons that follow, Brown University submits that plaintiff should be required to proceed at trial under his true legal identity.

**Argument**

    **I.)**    **The Federal Rules of Civil Procedure embody a common law and constitutionally-embedded presumption of openness in judicial proceedings, as well as a principle of fundamental fairness, that prohibit parties from invoking federal judicial power under a pseudonym in all but the most extraordinary circumstances.**

"[O]ne of the essential qualities of a Court of Justice [is] that its proceedings should be public." *Doe v. Meglass,* 654 F.3d 404, 408 (3rd Cir. 2011) (quoting *Dabney v. Cooper,* 109 Eng. Rep. 438, 441 (K.B. 1829)). There has historically and consistently been a "strong public interest in an open litigation process," and "identifying the parties to the proceeding is an important dimension of publicness" – because "people have a right to know who is using their courts." *Id.* (quoting *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir. 1997)); *see also Doe v. Public Citizen,* 749 F.3d 246, 273 (4th Cir. 2014) ("Pseudonymous litigation undermines the public's right of access to judicial proceedings. The public has an interest in knowing the names of the litigants, …, and disclosing the parties' identities furthers openness in judicial proceedings[.]" (internal citations omitted)). This long-standing principle is embodied in Federal Rule of Civil Procedure 10(a), which requires the title of the complaint to "name all parties." The rule thus serves the vital purpose of "facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly[,]" *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 183, 188-89 (2d Cir. 2008), because "party anonymity [is] a limited form of closure," *James v. Jacobson,* 6 F.3d 233, 238 (4th Cir. 1993), that "runs afoul of the public's common law right to access to judicial proceedings." *Does I Thru XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1067 (9th Cir. 2000).

    The Fifth Circuit has also recognized a First Amendment component regarding the public's access to the names of litigants. In *Doe v. Stegall,* 653 F.2d 180 (5th Cir. 1981), the court held that

identifying the parties is "more than a customary procedural formality; First Amendment guarantees are implicated when a court decides to restrict public scrutiny of judicial proceedings. *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 2829 & n.17, 65 L.Ed.2d 973 (1980). Although "[t]he equation linking the public's right to attend trials and the public's right to know the identity of the parties is not perfectly symmetrical[,]" there nevertheless, "remains a clear and strong First Amendment interest in ensuring that "(w)hat transpires in the courtroom is public property." 653 F.2d at 185 (quoting *Craig v. Harney,* 331 U.S. 367, 374, 67 S.Ct. 1249, 1254, 91 L.Ed. 1546 (1947)). And courts frequently refer to the "customary and constitutionally-embedded presumption of openness in judicial proceedings." *See, e. g., Plaintiff v. Francis,* 631 F.3d 1310, 1315-16 (11th Cir. 2011); *MacInnis v. Cigna Group Ins. Co. of America,* 379 F.Supp.2d 89, 90 (D. Mass. 2005); *Doe v. Blue Cross & Blue Shield of Rhode island,* 794 F.Supp. 72, 73 n. 3 (D.R.I. 1992).

Consequently, although it is within the discretion of a court to permit a plaintiff to proceed under a pseudonym, it is considered a "rare dispensation," and a court must be satisfied that there are "extraordinary circumstances" that support a request for anonymity. *Doe v. Public Citizens,* 749 F.3d 246, 273, 274 (4th Cir. 2014) (internal citation omitted); *U.S. v. Microsoft Corp.*, 56 F.3d 1448, 1464 (D.C. Cir. 1995) ("rare dispensation"); *James v. Jacobson,* 6 F.3d 233, 238 (4th Cir. 1993) ("rare dispensation"). "The use of a pseudonym is, in effect a partial sealing of a lawsuit that removes from public access certain aspects of a judicial proceeding." *Doe v. Rector and Visitors of George Mason University,* 179 F.Supp.3d 246, 273 (4th Cir. 2014). As such, "a district court has an independent obligation to ensure that extraordinary circumstances" support a request by a party to litigate a claim for judicial relief under a pseudonym. *Id.* (quoting *Public Citizen,* 749 F.3d at 274). Thus, there is a "strong presumption" against litigation by pseudonym, *see Plaintiff*

6

*B*, 631 F.3d at 1315, because a party that "invokes the judicial powers of the United States," "invites public scrutiny of the dispute and the proceeding." *Luckett v. Beaudett,* 21 F. Supp. 2d 1029, 1029 (D. Minn. 1988) (internal citation omitted).[1]

The Rules and the court decisions also recognize that, in addition to the common law and constitutional underpinnings of the public's right of access to court proceedings, including the true identity of the parties, notions of fundamental fairness also support the presumption that a plaintiff who invokes the government's judicial power will do so using his or her true identity. *See Rose v. Beaumont Independent School District*, 240 F.R.D. 264, 267 (E.D. Tex. 2007). That notion recognizes that when a party brings a civil action of their own volition, to vindicate their own private interests, fairness usually dictates that the plaintiff should stand by his charges publicly – unless there are very significant reasons to excuse them from doing so. *Id.* "[B]asic fairness requires that where a plaintiff makes such accusations publicly, [he] should stand behind those accusations publicly[.]" *Doe v. Indiana Black Expo, Inc.*, 923 F. Supp. 137, 141-42 (S.D. Ind. 1996). "[T]he mere filing of a lawsuit can have significant effects on a defendant[,] because the public charges included in a civil lawsuit can cast a shadow over the defendant's reputation until the case is resolved." *Id.* (internal citation omitted). *Accord, Southern Methodist Univ. Assn. of Women Law Students v. Wynne & Jaffe,* 599 F.2d 707, 713 (5th Cir. 1979); *Doe v. Shakur*, 164 F.R.D. 359, 361 (S.D.N.Y. 1996).

---

[1] Both the Fourth Circuit and the Seventh Circuit have held that, even if defendant does not object to a plaintiff's request to proceed under a pseudonym, a court has an independent duty to determine whether the circumstances are sufficiently exceptional to justify granting the request. *See Doe v. Public Citizen,* 749 F.3d at 274; *Blue Cross & Blue Shield United of Wisconsin,* 112 F.3d at 872. The public is essentially the equivalent of a third party in interest whose interest is in observing how the judicial power is exercised.

Here, Doe's complaint contains serious public allegations against Brown University. Invoking the judicial authority of the United States, he alleges that Brown, through its employees, intentionally discriminated against him based upon his sex to cause him injury; he has accused Brown University of maintain an "inherent and systemic gender bias against male students accused of sexual misconduct", and utilizing a disciplinary process that "prevents male students from receiving a fair and impartial hearing when a complaint is made against them by a female student;" as well as "promot[ing] an institutional 'regime of fear' surrounding the issue of sexual assault, in which administrators and employees are deterred from advocating on behalf of male students out of concern for their job security[.]" ECF No. 1 at 26. He further claims that Brown's "flawed program and mishandling of [his] case were symptomatic of a broader culture of inherent, systemic and intentional gender bias against male students accused of sexual misconduct" who "are invariably found guilty, regardless of evidence, or lack thereof[.]" ECF No. 1 at 32, 34.

The complaint's extensive narrative of Brown's alleged intentional discrimination; violation of his rights under the Code of Student Conduct; and breach of its implied duty of good faith and fair dealing owed to its students, are damning allegations that could very well color the perceptions of both present and potential students, as well as their parents, as to the University's fitness as an institution of higher education; thereby damaging its reputation in the academic community, and its ability to compete for the best applicants. Thus far, John Doe has been permitted the "rare dispensation" of making those injurious accusations from behind a "cloak of anonymity," shielding himself from any responsibility for them, *see Beaumont Independent School District*, 240 F.R.D. at 267-68; *Shakur*, 164 F.R.D. at 361; *Indiana Black Expo, Inc.*, 923 F.Supp. at 141, and if his accusations are ultimately unproven after trial, "then anonymity [has] provide[d] the shield behind which [his] defamatory charges [have been] launched without shame or liability." *Id.*

But before he is permitted to try his case under a cloak of anonymity, this Court has an independent obligation to determine if there is in fact an extraordinary justification for that dispensation, and Doe "bears the burden to demonstrate a legitimate basis for proceeding at trial in that manner. *See Qualls v. Rumsfeld,* 228 F.R.D. 8, 10 (D.D.C. 2008).

> **II.)   Doe's original basis for proceeding under a pseudonym, as a victim of a human rights violation whose physical safety would be jeopardized if his true identity was revealed, lacks sufficient evidentiary support to warrant use of a pseudonym at trial.**

As previously noted, Doe's ex parte motion for leave to proceed under a pseudonym, and its brief supporting memorandum, were based upon the "serious nature of the allegations" in the complaint - allegations which Doe asserted created the "possibility of acts of reprisal that could further prevent [him] from proceeding with his college and future endeavors, and inflict further severe physical and/or mental harm" upon him." ECF No. 4-1 at 1.

While a risk of reprisal or harm can be a basis for permitting a plaintiff to proceed under a pseudonym, reliance on that basis requires the plaintiff to proffer evidence that enables the Court to evaluate the severity of the threatened harm, as well as the reasonableness of the plaintiff's fear that the threatened harm will actually occur if they are required to disclose their true identity. *See, e.g., Meglass,* 654 F.3d at 408 ("the plaintiff must show both (1) a fear of severe harm and (2) that the fear of the severe harm is reasonable") (internal quotation marks and citation omitted); *Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate,* 596 F.3d 1036, 1040 (9th Cir. 2010) (plaintiffs submitted affidavit, internet postings and newspaper on-line forums evidencing threats of physical violence against the minor plaintiffs); *Does I Thru XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1064-65 (9th Cir. 2000) (plaintiffs filed evidence of plaintiff-workers' conditions in the Saipan garment industry; evidence that China's state secrets law had been used to imprison

workers for complaining about work conditions abroad; and testimony that they feared they or their family members would be arrested); *Stegall*, 653 F.2d at 186 ("Evidence on the record indicates the Does may expect extensive harassment and perhaps even violent reprisals if their identities are disclosed to a . . . community hostile to the viewpoint reflected in plaintiffs' complaint."); *Shakur*, 164 F.R.D. at 362 ("Plaintiff's allegation that she has been subjected to death threats would provide a legitimate basis for allowing her to proceed anonymously. Plaintiff has not, however, provided any details."). Thus, to prevail on an argument that the use of a pseudonym is necessary to prevent retaliatory harm for bringing suit, it is necessary for the plaintiff to present evidence describing and demonstrating the nature of the "reprisal" the plaintiff anticipates so that the Court can evaluate the severity of the anticipated harm from such a "reprisal", and evidence from which the Court can evaluate the likelihood that such "reprisals" will actually occur if the plaintiff's identity is revealed. Here Doe did not provide any such evidence when the ex parte motion was filed.

Moreover, the memorandum in support of the ex parte motion implied that Doe was akin to victims of "human rights" violations. ECF No. 3-1 at 6 ("Courts have recognized that Doe status is appropriate in cases concerning alleged human rights violations.") Doe's memorandum cites to several cases where, without discussion, alleged victims of human rights violations litigated their claims under pseudonyms. ECF No. 3-1 at 6. By citing those cases, however, and proffering that analogy, Doe implicitly compared his plight to that of Croat and Muslim victims of rape, forced prostitution, impregnation and torture, who were bringing an action against the leader of the Bosnian-Serb forces that allegedly committed those atrocities, *see Kadic v. Karadz,* 70 F.3d 232, 236-37 (2d Cir. 1996); to an expatriate citizen of Guatemala who was brutalized and tortured by military personnel under the command of the former Guatemalan Defense Minister, *see Xuncax v.*

10

*Gramajo,* 886 F.Supp. 162 (D.Mass. 1995); and to Algerian women suing an Algerian political group that they alleged was responsible for their rape, mutilation, and sexual slavery, *see Doe I v. Islamic Salvation Front (FIS),* 993 F.Supp. 3, 5 (D.D.C. 1998). ECF No. 2-1 at 6. Doe asserted that, "[a]s in those cases, the Court should allow Plaintiff to employ a pseudonym because he is alleging that Defendant is responsible for her current and future reputation, and physical and mental well-being. ECF No. 3-1 at 7.

Plaintiff is plainly not in the same category as victims of human rights violations whose physical safety may be jeopardized by requiring them to litigate their claims under their true identities. The analogy he attempted to make when he initiated his lawsuit was inapt then, and is inapt now. His claim that he would be subjected to "reprisals" is a wholly speculative claim, unsupported by any evidence, and therefore is insufficient as a basis for permitting him the rare dispensation of trying his case under a pseudonym.

### III.)   Potential economic harm and embarrassment are insufficient bases to justify invoking the federal judicial power under a pseudonym.

To the extent that Doe's concern about "acts of reprisals" that "could further prevent [him] from proceeding with his college or future endeavors" and "inflict further . . . mental harm" is presumably referring to difficulties he may face in applying for admission to medical school or finding future employment - because revealing his identity would also reveal he was found to have committed a student conduct violation, and that he is suing Brown. Aside from the fact that his transcript will reveal the student conduct violation whether he is allowed to use a pseudonym or not - such potential economic harm and embarrassment has been rejected as a sufficient justification to proceed anonymously.   *See, e.g. Meglass*, 654 F.3d at 408; *Doe v. Temple*

*University*, 2014 WL 4375613 * 2 (E.D. Pa.); *K.H. v. Holtzapple*, 299 F.R.D. 438 (M.D. Pa. 2014);

*Indiana Black Expo, Inc.*, 923 F.Supp. at 142; *Doe v. Hallock*, 119 F.R.D. 640, 644 (S.D. Miss.

1987).  *Hallock* and *Indiana Black Expo, Inc.* were employment discrimination actions under Title

VII and the Americans with Disabilities Act respectively - the former involving sexual harassment

of the plaintiff and the latter involving the plaintiff's mental health.  *Hallock*, 119 F.R.D. at 641;

*Indiana Black Expo, Inc.*, 973 F.Supp. at 141.  *Meglass* was a Section 1983 claim based on the

defendants' publication of emails and flyers characterizing plaintiff as a potentially mentally

unstable pedophile. 654 F.3d at 407.  In each case the court acknowledged that requiring the

plaintiff to reveal their true identity in pursuing their claims might make their future employment

more difficult, but in each case the court determined that such potential economic harm was

insufficient to overcome the strong presumption against an adult plaintiff proceeding under a

pseudonym when seeking relief in a public judicial forum.

    *Doe v. Temple University* and *K.W. v Holtzapple* are particularly instructive with respect to

this case. In *Doe v. Temple University,* the plaintiff had been expelled from the University after a

student disciplinary process had found he had committed a sexual assault, 2014 WL 4375613 *1.

He brought suit alleging breach of contract and gender discrimination, and sought permission to

proceed under a pseudonym. *Id.* He asserted that, notwithstanding his denial that he was guilty of

any wrongdoing, if the university's finding that he committed a sexual assault was publicly known

it would result in "further damage to his personal and professional reputation[,]" and render it

unlikely that he would get into medical school if he was unsuccessful in getting his record cleared.

*Id.* *2.  The Court succinctly stated: "this is exactly the kind of embarrassment [and] economic

harm that does not support the use of a pseudonym."  *Id.* (internal quotations and citation omitted).

*Holtzapple* also was a case involving university discipline. It involved a complaint filed by six students at Bucknell University who had been sanctioned for possession of marijuana and firearms while residing in a university owned fraternity house.  299 F.R.D. at 439.  They subsequently brought a civil action claiming the search that discovered the contraband violated the federal constitution's Fourth Amendment.  *Id.*  They sought leave to proceed under fictitious names because they were concerned that if their possession of contraband was disclosed to the general public, it would damage their standing with fellow students and professors, and potentially interfere with future opportunities for higher education and employment.  299 F.R.D. at 439-40. Just as in *Doe v. Temple University,* the Court denied the request, holding that the fact a plaintiff might suffer this type of embarrassment or economic harm was insufficient to overcome the general presumption that the identities of the parties to a lawsuit must be treated as public information.  *Id.* at 940.

It follows that, to the extent John Doe's bare assertion about the "possibility of acts of reprisal that could further prevent [him] from proceeding with his college and future endeavors," ECF No. 3-1 at 1, encompasses embarrassment and economic concerns about future employment or medical school opportunities, that concern is not sufficient to justify permitting him to prosecute the trial of this matter under a pseudonym when weighed against the strong presumption of openness in judicial proceedings.

**IV.)     Doe should be required to use his true legal identity when this matter is tried before a jury: so that the jury does not infer that the Court may believe the plaintiff has suffered harm; because the predominant focus of the trial will be on the actions of Brown's agents, not the plaintiff's sexual conduct; and so the public will be able to more fully observe and assess the court's exercise of governmental power.**

Courts have held that in some circumstances the presumption favoring openness in judicial proceedings may be overcome in cases that involve matters of a "highly sensitive and personal nature" that, because of their intrinsic character, constitute a substantial privacy right. *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d at 189-90 (citing *M.M. v. Zavaras,* 139 F.3d 798, 803 (10th Cir. 1998) and *Roe v. Aware Woman Ctr. for Choice, Inc.,* 253 F.3d 678, 685 (11th Cir. 2001)); *Advanced Textile,* 214 F.3d at 1068. Described as matters of the "utmost personal intimacy[,]" *see Stegal,* 653 F.2d at 185, examples include an action brought by a transsexual for related medical coverage;[2] a plaintiff who did not want to reveal his sexual orientation[3]; plaintiffs who alleged they had been sexually assaulted as minors;[4] an adult sexual assault victim;[5] a plaintiff who sought to restrain dissemination of a sexually explicit videotape on the internet;[6] a plaintiff claiming to have been impregnated by artificial insemination of her physician's own sperm, and who was concerned about how public knowledge of that fact would affect the children who were born of those

---

[2] *Doe v. Blue Cross & Blue Shield of Rhode Island,* 794 F.Supp.72 (D.R.I. 1992) (granted).

[3] *Doe v. Burkland,* 808 A.2d 1090 (R.I. 2002) (denied); *but see Doe v. United Servs. Life Ins. Co.,* 123 F.R.D. 437, 439 (S.D.N.Y. 1988) (granted).

[4] *Rose v. Beaumont Independent School District,* 240 F.R.D. 264 (E.D. Tex. 2007) (denied); *Doe v. Kolko,* 242 F.R.D. 193 (E.D.N.Y. 2006) (granted).

[5] *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185 (2d Cir. 2000) (trial court's denial vacated and remanded for reconsideration).

[6] *Doe v. Szul Jewelry, Inc.,* 2008 WL 2157893 (Sup. Ct. N.Y.) (granted).

pregnancies;[7] and a plaintiff seeking insurance coverage for treatment of significant mental health and substance abuse treatment.[8]   Other examples of the type of matters that are considered sufficiently sensitive and of a highly personal nature to warrant the "rare dispensation" of litigation by pseudonym are abortion;[9] status as an AIDS patient;[10] coercion of minor teenage girls to engage in explicit and graphic homosexual activity;[11] and status as a child pornography victim suing the alleged perpetrator.[12]

In several recent cases since 2016, courts have relied on the matters of "a sensitive and personal nature" rubric to permit plaintiffs bringing actions similar to John Doe's to use a pseudonym in actions against their university or college – at least at the pre-trial stage. *See, e.g., Doe v. Trustees of Dartmouth College,* 2018 WL 2048385 (D.N.H. May 2, 2018); *Doe v. University of Mississippi,* 2018 WL 1703013 (S.D. Miss. April 6, 2018); *Doe v. Purdue University,* 321 F.R.D. 339 (N.D. Ind. 2017); *Doe v. University of St. Thomas,* 2016 WL 9307609 (D. Minn. May 25, 2016); *Doe v. Colgate,* 2016 WL 1448829 (N.D.N.Y. April 12, 2016); *Doe v. Rector and Visitors of George Mason University,* 179 F.Supp.3d 583 (E.D. Va. 2016). In each of these cases, the court found that the private sexual encounters between the plaintiff and his accuser involved sensitive matters of a highly personal and intimate nature. *Dartmouth College* at *6; *University of*

---

[7] *James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993) (trial court denied vacated and remanded for reconsideration).

[8] *Doe v. United Behavorial Health,* 2010 WL 5173206 (E.D. Pa.) (granted).

[9] *Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678, 685 (11th Cir. 2001).

[10] *WGA v. Priority Pharmacy, Inc.*, 184 F.R.D. 616, 617 (E.D. Mo. 1999)

[11] *Plaintiff B v. Francis*, 631 F.3d 1310, 1317-19 (11th Cir. 2011) (granted).

[12] *Doe v. Oshrin*, 299 F.R.D. 100, 104-05 (D.N.J. 2014) (granted).

*Mississippi,* at * 2; *Purdue University* at 342; *University of St. Thomas,* at * 2; *Rector and Visitors of George Mason University* at 593. But as the District Court for the District of New Hampshire noted, although "one's sexual practices are among the most intimate parts of one's life, and the public disclosure of such information may subject one to embarrassment or ridicule[,]" "mere embarrassment does not generally suffice to permit the use of a pseudonym." *Dartmouth College* at * 5 (citations omitted).

Instead, the *Dartmouth College* case, as well as the others, relied on what Brown asserts is the suspect proposition that public disclosure of the plaintiff's name would defeat the purpose of the litigation, by subjecting him to reputational harm, and impairing his future educational and career prospects, *regardless of the actual outcome of [the] action. Id.* at * 5-6. The court reasoned that:

> More significant in this case is plaintiff's argument that public disclosure will subject him to reputational damage and will impair his future educational and career prospects, regardless of the actual outcome of this action. Plaintiff cites other campus sexual-assault cases to show that the mere accusation that one has committed a sexual assault can subject the accused to lasting reputational damage and harassment, even where, as here, the accused is ultimately found not culpable of sexual assault. See doc. no. 21 at 6–7 (discussing other cases). Such a concern is only exacerbated in the Internet age, which can provide additional channels for harassment and will connect plaintiff's name to Dartmouth's findings and sanction forever, whether or not he is successful in this litigation.
>
> Thus, this is not a case where, far from damaging plaintiff's reputation, the litigation will afford plaintiff an opportunity to "clear his name in the community." *Megless,* 654 F.3d at 410. Plaintiff has a reasonable fear that, *whatever the outcome of the action, public identification will subject him to severe reputational harm and harassment, and will defeat the very purpose of this litigation.*

*Id.* at * 6 (emphasis added). Two of the decisions cited above also relied upon this rationale.[13] If

---

[13]   *See Purdue University,* 321 F.R.D. at 342 ("If Plaintiff's identity is revealed, Plaintiff would suffer the very harm to his reputation that he seeks to remedy by bringing this lawsuit; in other words, if Plaintiff is successful in proving that the charges of sexual misconduct against him were unfounded and that Defendants' procedures violated his due process rights, the revelation of

this rationale is accepted, it effectively creates an entire class of civil actions in which the "rare dispensation" of proceeding under a pseudonym is granted, based on the belief that a judicial decision that clears the plaintiff of any misconduct will *not* "clear his name." *See id.* at * 6.

One court has asserted that, "[i]t does not require speculation or surmise to realize that a young man found to have committed a non-consensual sexual act at a university — in an administrative proceeding requiring a preponderance of the evidence — could be permanently harmed by release of that information *even if he later prevails* in his challenge to the validity of the process that judged him guilty in the first place." *University of St. Thomas,* 2016 WL 9307609 at * 4 (emphasis added). Brown respectfully asserts that it does require some speculation or surmise to determine that a plaintiff such as John Doe will be irreparably or permanently harmed, notwithstanding a favorable court decision, in his own name, that effectively clears him of any misconduct. Moreover, these case are brought for the primary purpose of obtaining a court order that requires the defendant school to remove any reference that the plaintiff was responsible for a Code of Conduct violation from their academic transcript, so that the plaintiff may have a "clean" transcript to present to other transferee schools, postgraduate and professional schools, and prospective employers. Thus, the harm that a negative transcript notation may have on the plaintiff's future endeavors *is* removed if the plaintiff's lawsuit is successful, and "the very

---

Plaintiff's identity 'would further exacerbate the emotional and reputational injuries he alleges.' *Colgate Univ.*, 2016 WL 1448829, at *3."); *University of St. Thomas,* 2016 WL 9307609 at * 2 ("More critically in this case, "the injury litigated against would be incurred as a result of disclosure of the plaintiff's identity." *Sealed v. Sealed*, 537 F.3d at 189. Among the injuries of which Mr. Doe complains is the damage done to his reputation and future prospects by what he describes as a flawed process for assessing allegations of sexual assault at the University of St. Thomas. Even if his lawsuit were successful and his claims of unfair treatment were vindicated down the road—an outcome about which the Court offers no opinion of likelihood—the complained-of damage to Mr. Doe's reputation would be perhaps unfixable if his identity is known. "If [Doe] were not allowed to proceed anonymously, part of the relief he seeks— expungement of his school record—would fall short of making him whole.").

purpose" of the litigation will have been achieved even if the lawsuit is litigated under the plaintiff's true legal name.

But notwithstanding that proposition, in this case, as in the cases cited above, the plaintiff has been permitted to proceed under a pseudonym throughout the pre-trial phase of this case. Courts have, however, recognized that the calculus for permitting the use of a pseudonym changes when the matter actually goes to trial, the most public phase of a civil action, and the phase where public scrutiny of the administration of justice is most available. *See, e.g., Dartmouth College*, 2018 WL 2048385 at * 7 ("As plaintiff acknowledges, the calculus regarding the use of a pseudonym may change depending on the stage of the litigation.") (citations omitted); *Doe v. Cabrera,* 307 F.R.D. 1, 10 (D.D.C. 2014) ("If, however, a trial is ultimately needed to resolve this dispute, then the defendant's ability to get a fair trial will likely be compromised if the Court allows the plaintiff to continue using a pseudonym[.]"); *E.E.O.C. v. Spoa, LLC,* 2013 WL 5634337 at * 3 (D. Md. Oct. 15, 2013) (holding that Doe plaintiff, who the EEOC was suing on behalf of, would remain "anonymous in the pleadings, motions, docket entries, and all other written materials filed in this case;" but "shall appear under her legal name in open court."); *See also Doe v. Haskell Indian Nations University,* 266 F.Supp.3d 1277, 1289 (D. Kan. 2017) ("Moreover the use of a pseudonym would likely be temporary at best.") (citing *Doe v. Cabrera, supra; E.E.O.C. v. Spoa, LLC, supra*).

In the final analysis there are three basic reasons why this Court should require the plaintiff to use his true legal identity in the upcoming jury trial. First, there is the concern that "the jurors may construe the Court's permission for the plaintiff to conceal [his] true identity as a subliminal comment on the harm" Brown has allegedly caused him. *See Cabrera,* 307 F.R.D. at 10. As one court has noted:

> It is not difficult to appreciate that jurors may infer that the Court has an opinion about the harm the plaintiff has allegedly suffered by its decision to permit the plaintiff to conceal [his] true identity. The Court cannot afford the plaintiff that potential advantage at the expense of the defendant, who like the plaintiff is also entitled to a fair trial.

*Id.* at 10 n. 15. That concern is supported by the number of cases such as this – in which a plaintiff challenges a finding by a university that he was responsible for a sexual assault - where the courts have permitted the plaintiff to file a complaint and conduct pre-trial proceedings under a pseudonym on the basis that the plaintiff will suffer irreparable harm *even if* he prevails at trial. It is not unreasonable to conclude that those decisions have been influenced by the controversy surrounding sexual misconduct hearings within a university's disciplinary process, and a perception that those processes are not up to the task of making such a reputation-altering decision. If courts are susceptible to the sentiment that the plaintiff deserves the protection of anonymity during the pre-trial process, it is reasonable to be concerned that a jury may infer that the court harbors that sentiment – and that inference may bias the jury in favor of the plaintiff to the defendant's obvious detriment.

The second reason is that the trial here will focus predominantly on the actions of Brown University's agents, and their intent if the Title IX claim is permitted to go trial, and not the details of the sexual encounter that was the basis for the disciplinary action. Neither party has deposed the former Brown student who made the complaint against Doe, and Brown does not intend to call her as witness. When weighed against the fact that the trial will focus on Brown University's agents' actions, the chance that the jury may be improperly influenced by permitting the plaintiff to try his case anonymously tips the balance in favor of ensuring a fair trial by requiring Doe to be identified at trial by his true identity.

The third, and perhaps the most important reason, is that the trial of a matter is arguably the

most important judicial proceeding that should be fully open to public scrutiny, to include the true identities of the parties. The reason for the strong common law and constitutionally-embedded presumption of openness of judicial proceedings is so the citizenry can view the courts exercise of governmental power, in order to assess the court's exercise of that power. Knowing the identity of the parties provides the public with the means to evaluate whether the law is being administered impartially and fairly from one individual to the next, without regard to the power or position of the party – or their lack of power or position. And that is essential to the public's confidence that the law and justice are being administered with an even hand.

## Conclusion

For the above-stated reasons, defendant respectfully submits the plaintiff should be identified by his true legal name when this case is tried before a jury.

Defendant,
By their attorneys

/s/ Thomas R. Bender                                        /s/ Steven M. Richard
Thomas R. Bender #2799                                 Steven M. Richard
Associate Counsel                                            Nixon Peabody LLP
Brown University                                              One Citizens Plaza, Suite 500
Box 1913                                                          Providence, RI 02903
350 Eddy Street                                                (401) 454-1020 (Phone)
Providence, RI 02912                                       srichard@nixonpeabody.com
94010 863-5466
thomas_bender@brown.edu

Certificate of Service

I certify that on July 27, 2018, I caused a copy of this Defendant's Memorandum of Law Re Plaintiff's Use of "John Doe" Pseudonym at Trial to be served upon counsel of record via the Court's CM/ECF system.

/s/ Steven M. Richard

Steven M. Richard